UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STEVEN W. H., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. C18-5679-BHS-MLP <br><br> REPORT AND RECOMMENDATION |

## I. INTRODUCTION

Plaintiff seeks review of the denial of his application for Disability Insurance Benefits and Supplemental Security Income. Plaintiff contends the administrative law judge ("ALJ") erred by failing to call a medical expert to infer a disability onset date prior to July 2014, evaluating the medical opinion evidence, discounting Plaintiff's testimony regarding the severity of his symptoms, discounting Plaintiff's sister's lay witness statement, and assessing Plaintiff's RFC. (Dkt. # 12.) As discussed below, the Court RECOMMENDS that the Commissioner's final decision be REVERSED and this matter REMANDED for further administrative proceedings.

REPORT AND RECOMMENDATION - 1

## II. BACKGROUND

Plaintiff was born in 1954 and has an eleventh grade education. AR at 79. Plaintiff has worked full-time as a fire life safety tech from 1995 until October 31, 2009, when he was laid off. *Id*. at 79-80, 142, 260.

On March 20, 2015, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning on June 15, 2012.[1] AR at 25. His date last insured is December 31, 2014. *Id*. at 67. However, his claim was denied initially on August 4, 2015, and upon reconsideration on January 19, 2016. *Id.*

Plaintiff also filed a Title XVI application on May 12, 2015, alleging disability beginning on June 15, 2012. *Id*. at 25, 242. On January 19, 2016, Plaintiff was found disabled on his Title XVI claim only, with an established onset date of July 1, 2014. *Id*. at 25, 152-67.

Plaintiff appealed the established onset date of disability, and an ALJ conducted a hearing on May 10, 2017. *Id.* at 60-113. On August 24, 2017, the ALJ issued a Partially Favorable decision affirming the prior decision of the agency that found Plaintiff disabled on July 1, 2014, but not before. *Id*. at 21-36.

Specifically, utilizing the five-step disability evaluation process,[2] the ALJ found:

Step one: Plaintiff has not engaged in substantial gainful activity since the alleged onset date.

---

[1] Plaintiff first applied for benefits on December 20, 2012, alleging disability as of June 15, 2012. AR at 256. On December 21, 2012, this application was denied because Plaintiff failed to submit signed release form authorizations. *Id.* at 229. Rather than obtaining them, the agency accepted a second application three days later on January 3, 2012. *Id.* at 231. The ALJ noted during the hearing that his understanding was "the application in 2012 was a technical denial because release forms were not submitted – 2013 was a new application. I, I think that's the only one for which there's any medical records[.]" *Id.* at 64. Plaintiff applied for benefits again on January 3, 2013, which was denied on February 11, 2013 when the agency concluded Plaintiff could do his past work as a fire life safety tech. *Id.* at 64, 233, 260. The ALJ concluded that as Plaintiff did not appeal from these denials, "the determinations became administratively final on both claims . . . the evidence does not support reopening of the prior claims." *Id*. at 26.

[2] 20 C.F.R. §§ 404.1520, 416.920.

> Step two: Since the alleged onset date of disability, June 15, 2012, the claimant has had the following severe impairment: spine disorder. Since the established onset date, July 1, 2014, the claimant has had the following severe impairments: spine disorder and neuropathy.
>
> Step three: These impairments do not meet or equal the requirements of a listed impairment, including Listings 1.04 or 11.14.[3]
>
> Residual Functional Capacity: Prior to July 1, 2014, the date the claimant became disabled, the claimant had the RFC to perform medium work, except he was limited to occasional climbing of ladders, ropes, and scaffolds; frequent climbing of ramps and stairs; and frequent crawling, crouching, stooping, balancing, and kneeling.
>
> Beginning on July 1, 2014, the claimant has the residual functional capacity to perform light work except occasional climbing of ramps and stairs; occasional climbing of ladders/ropes/scaffolds; occasional stooping and crawling; and occasional exposure to extreme cold and hazards such as moving mechanical parts and unprotected heights.
>
> Step four: Prior to July 1, 2014, the claimant was capable of performing past relevant work as a protective signal installer. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity.
>
> Beginning on July 1, 2014, the claimant's residual functional capacity has prevented the claimant from being able to perform past relevant work.
>
> Step five: Since July 1, 2014, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform.

AR at 24-37.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. *Id*. at 1-5. Plaintiff appealed the final decision of the Commissioner to this Court.

### III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial

---

[3] 20 C.F.R. Part 404, Subpart P. Appendix 1.

evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV. DISCUSSION

### A. The ALJ Erred by Denying Plaintiff's Request to Call a Medical Expert to Testify Regarding the Onset Date of Plaintiff's Disability

As noted above, the ALJ found that Plaintiff was not disabled prior to July 1, 2014, because he could perform medium level work and therefore could perform his past work as a protective signal installer. AR at 34. However, the ALJ found that the evidence of record established disability as of July 1, 2014, when "new imaging studies and Ms. Riesinger's treatment records justify a light exertional level with postural and exertional limitations." *Id*. at 34. Based on the testimony of the vocational expert, the ALJ found that once Plaintiff was limited to light work instead of medium work, there were no jobs that existed in significant

numbers in the national economy that Plaintiff could perform given his age, education, and work experience. *Id.* at 36. Plaintiff contends that the ALJ committed harmful error in this case by denying his request that the ALJ obtain testimony from a medical expert to help establish the onset date of Plaintiff's disability, as his back-injury stems from a traumatic injury when Plaintiff was lifting and moving his elderly father on June 15, 2012, his alleged onset date. (Dkt. # 12 at 8.) *See also* AR at 71-73. The ALJ stated that because he considered the "in-house DDS staff" to be medical experts who have already rendered opinions regarding Plaintiff's alleged onset date, it would not be probative to call a medical expert or specialist to testify on the subject. AR at 73.

The Commissioner concedes that, under the Social Security Ruling ("SSR") 83-20, which was in effect at the time of Plaintiff's administrative hearing, the ALJ should have "call[ed] on the services of a medical advisor when onset [date of disability] must be inferred." (Dkt. # 13 at 3) (citing SSR 83-20, available at 1983 WL 31249, at *3).[4] However, the ALJ in this case declined to do so.  AR at 26. Specifically, the ALJ found that there was insufficient evidence in the record to find Plaintiff disabled from his alleged onset date of June 15, 2012 until the established disability onset date of July 1, 2014. The ALJ noted that there was "minimal medical evidence" from this two-year period, other than the consultative evaluation of Dr. MacArthur in late January 2013 and a lone treatment note from nurse practitioner Karen Riesinger in February 2014. *Id.* at 30. The ALJ acknowledged Plaintiff's explanation that he did not have medical insurance for much of this time, and noted that "by itself, a lack of insurance is not a reason to

---

[4] SSR 83-20 was rescinded on October 2, 2018 and replaced with SSR 18-01p and SSR 18-02p. *See* SSR 18-01p, available at 2018 WL 4945639, at *1. SSR 18-01p provides that an ALJ "may, but is not required to, call upon the services of a medical expert (ME) to assist with inferring the date that the claimant first met the statutory definition of disability." Moreover, the ruling provides that "if a Court reverses our final decision and remands a case for further administrative proceedings after the applicable date of this SSR, we will apply [SSR 18-01p] to the entire period at issue in appropriate cases when we make a decision after the court's remand." Thus, the current SSR no longer provides that the ALJ should call upon the services of an ME to infer onset date but makes it discretionary.

REPORT AND RECOMMENDATION - 5

1  deny a disability claim. However, a file must contain evidence that supports allegations of
2  disability." *Id*. at 30.
3        In January 2013, Robert MacArthur, M.D. performed a consultative examination of the
4  Plaintiff. AR at 30. Dr. MacArthur noted that Plaintiff's lumbar x-rays showed lumbosacral spine
5  chronic changes after L1 compression fracture, new versus old, and L2-3 degenerative disc
6  disease with bridging osteophytes with right-sided L5 radiculopathy but not focal motor or
7  sensory deficit. *Id*. at 30, 341-42. There was lumbar spasm on examination, and a severely
8  limited lumbar range of motion. *Id*. at 30. His seated leg raise was also positive on the right. *Id.*
9  at 30. Despite these objective findings, Dr. MacArthur opined that Plaintiff could lift and carry
10 50 pounds occasionally and 25 pounds frequently, and stand and walk up to 6 hours in a normal
11 8-hour workday. *Id.* at 341-42.
12       In February 2014, nurse practitioner Karen Riesinger treated Plaintiff for his back
13 condition. Plaintiff explained that he had been without insurance and a primary care provider for
14 the past few years. He described pain from a back injury two years ago when he moved his father
15 into a wheelchair. He rated his pain as three or four out of ten, and was not regularly taking pain
16 medicine. He noted that after the injury he became homeless before eventually moving in with
17 his sister. AR at 30, 353. On examination, Plaintiff was positive for back pain, lumbar
18 tenderness, and some right arm numbness, although reflexes and range of motion were normal.
19 *Id*. at 31, 354. The ALJ noted that "there were no other office visits before the established onset
20 date [of July 2013]" when the ALJ found that "treatment records and imaging results from July
21 2014 show a change in the claimant's condition." AR at 31.
22       The Commissioner points out that even under SSR 83-20, any judgment about an inferred
23 onset date "must have a legitimate medical basis," and therefore a medical expert is unnecessary

REPORT AND RECOMMENDATION - 6

when "no reasonable medical advisor could infer the disability began during a period for which the claimant lacked medical documentation." *Wellington v. Berryhill*, 878 F.3d 867, 875 (9th Cir. 2017) (citing SSR 83-20, 1983 WL 31249, at *3). The Commissioner contends that this is such a case where the ALJ had no obligation to consult a medical expert because the minimal medical documentation by Dr. MacArthur and Nurse Riesinger did not support a reasonable inference that Plaintiff's disability began before July 2014. (Dkt. # 13 at 4.)

Plaintiff testified that the reason there was little objective documentation of his condition during this time period was because he was homeless and had no health insurance. When he was finally able to get health insurance through the Affordable Care Act ("ACA") in 2014, he was sent for an MRI. Once the MRI results were obtained, the ALJ found that on and after July 1, 2014, Plaintiff's allegations are "consistent with the evidence" and he was disabled. Plaintiff argues that the ALJ failed to consider that Plaintiff credibly alleged that the traumatic injury that occurred on June 15, 2012, when he felt a pop in his back while lifting his father to a wheelchair, was physically devastating and resulted in a permanent inability to work. (Dkt. # 2 at 7-8.)

The Court finds that, although the evidence documenting Plaintiff's back impairment between his alleged onset date and the July 1, 2014 established date of disability is sparse at best, Plaintiff has credibly explained why this is the case. Plaintiff was homeless in San Diego until he moved in with his sister in 2014, and he did not obtain health insurance until ACA allowed him to see a doctor who eventually sent him for a MRI. AR at 85. Moreover, the evidence that does exist from this time period contains objective evidence documenting Plaintiff's spine disorder with resulting symptoms. As noted above, Dr. MacArthur noted that Plaintiff's lumbar x-rays showed lumbosacral spine chronic changes after L1 compression fracture, new versus old, and L2-3 degenerative disc disease with bridging osteophytes with right-sided L5 radiculopathy but

not focal motor or sensory deficit. *Id.* at 30, 341-42. On examination with Nurse Riesinger, Plaintiff was positive for back pain, lumbar tenderness, and some right arm numbness. *Id.* at 31, 354. In light of these objective findings, it was not a foregone conclusion that, had Plaintiff been sent for an MRI during the two-year period between June 2012 and July 2014, it would not have reflected the disabling level of impairment the ALJ found established as of July 1, 2014. Indeed, in 2015 when a lumbar MRI was finally ordered, it highlighted not only the compression fracture and discogenic endplate changes at L1, but moderate central canal stenosis from L3-L5, moderate to severe left L4-5 lateral recess stenosis, and foraminal stenosis from L2-L5. *Id.* at 375-76. It is quite likely that these changes would not have been visible on the 2013 x-ray, even if they were present, but that is precisely what the ALJ should have inquired of a qualified medical expert.

The Court is also troubled by the fact that the ALJ equated the DDS physicians with "medical experts" qualified to give testimony regarding the onset date of Plaintiff's spine disorder, although there is no indication that they are orthopedic specialists, neurosurgeons, or similarly qualified to render such an expert opinion. AR at 77. The Court finds that Plaintiff was entitled to testimony from a qualified medical advisor under SSR 83-20, which was in effect at the time, and the ALJ erred by failing to obtain such testimony.

Accordingly, this case must be reversed and remanded for further administrative proceedings. Notwithstanding the fact that SSR 18-01p will apply on remand, the ALJ is directed to call a qualified medical advisor to testify at the administrative hearing regarding the likely onset date of Plaintiff's spine disorder following his June 2012 alleged onset date.[5]

---

[5] Moreover, if the Commissioner is correct that the period from June 2012 through February 2013 was already adjudicated in Plaintiff's prior claim, the ALJ should consider whether to reopen the prior claim upon hearing the medical expert's testimony.

REPORT AND RECOMMENDATION - 8

**B. On Remand, the ALJ Should Reconsider the Other Medical Opinions of Record, as Well as Plaintiff's Testimony**

Plaintiff contends that, relevant to the period prior to July 1, 2014, the ALJ gave great weight to the opinions of consultative examiners Robert MacArthur and Kim Webster as well as the DDS evaluators. (Dkt. ## 10-12 (citing AR at 337-42, 358-63).) Plaintiff asserts that all these medical opinions are reliant upon Dr. MacArthur's evaluation, which has significant internal inconsistencies which make its conclusion regarding Plaintiff's RFC unreliable.

As noted above, the Court agrees that Dr. MacArthur's evaluation reflects several objective findings that document Plaintiff's spine disorder, including "severely restricted" lumbar range of motion, and a positive sitting straight-leg test on the right side. AR at 341. His lumbar x-rays showed a L1 compression fracture, and severe degenerative disc disease at L2-3 with significant anterior osteophytes. *Id*. at 342. Despite these objective findings, Dr. MacArthur opined that Plaintiff could perform medium exertional work, and this RFC was then used by the DDS examiners and ultimately adopted by the ALJ.

Dr. Webster's clinical findings following her examination on July 13, 2015 were similar to Dr. MacArthurs: all lumbar range of motion was severely restricted, there was a positive straight leg test (although it was bilaterally positive). *Id*. at 361. Plaintiff also reported pain with minimal percussion of the spine, no vibratory sense in his left toes, and no sensation in the lower extremities. *Id*. at 362. Dr. Webster stated that "a case could be made to limit lifting and carrying to an occasional and frequent basis to 10 pounds, as well as limited bending, stooping, and crouching." *Id*. at 363. However, the ALJ rejected this conclusion in a conclusory fashion and found that Plaintiff was limited to "light" rather than "sedentary" work following the established onset date. *Id*. at 34.

On remand, after obtaining testimony from a qualified medical expert such as an orthopedic or neurosurgeon regarding the likely onset date of Plaintiff's disabling spine disorder to a reasonable medical probability, the ALJ should re-evaluate the opinions of Dr. MacArthur, Dr. Webster, and the DDS physicians. Similarly, the ALJ should reevaluate Plaintiff's testimony as it relates to the period between his alleged onset date and the established disability onset date, as well as the testimony of Plaintiff's sister Suzanne Rinehart.[6]

## V. CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's final decision be REVERSED and this case REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g)

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **fourteen (14)** days after the filing of this Report and Recommendation. Objections, and any response, shall not exceed three pages. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar **fourteen (14)** days after they are served and filed. Responses to objections, if any, shall be filed no later than **fourteen (14)** days after service and filing of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on the date that objections were due.

Dated this 26th day of April.

*[signature]*

MICHELLE L. PETERSON
United States Magistrate Judge

---

[6] The ALJ only rejected Ms. Rine's testimony because it was "inconsistent with the minimal treatment records during that time," and this reasoning may not be germane or supported by substantial evidence following the testimony of the medical expert. AR at 33.